**Nos. 25-1980, 25-5064**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

SAN DIEGO GAS & ELECTRIC COMPANY, *et al.*
*Petitioners*,
v.
FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

On Petitions for Review of Final Orders of the Federal Energy Regulatory Commission

---

# REPLY BRIEF OF PETITIONERS SAN DIEGO GAS & ELECTRIC COMPANY, PACIFIC GAS AND ELECTRIC COMPANY, AND SOUTHERN CALIFORNIA EDISON COMPANY

---

Ross Fulton
Dan King
SAN DIEGO GAS & ELECTRIC COMPANY
8330 Century Park Court
San Diego, CA 92123
Telephone: (858) 654-1861
rfulton@sdge.com

John Perkins
Tara Kaushik
PACIFIC GAS AND ELECTRIC COMPANY
300 Lakeside Drive
Oakland, CA 94612
Telephone: (650) 766-9147
jr4t@pge.com

Andrea Tozer
Alexa Mullarky
SOUTHERN CALIFORNIA EDISON COMPANY
2244 Walnut Grove Avenue
Rosemead, CA 91770
Telephone: (626) 302-6713
andrea.tozer@sce.com

Zachary C. Schauf
Anand Viswanathan
Arjun R. Ramamurti
JENNER & BLOCK LLP
1099 New York Ave., NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
zschauf@jenner.com

Laurie Edelstein
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
Telephone: (628) 267-6800
ledelstein@jenner.com

*Counsel for Petitioners San Diego Gas & Electric Company, Pacific Gas and Electric Company, and Southern California Edison Company*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

GLOSSARY .......... v

INTRODUCTION .......... 1

ARGUMENT .......... 4

I. FERC'S INTERPRETATION OF THE REFUND PROVISION IS CONTRARY TO LAW AND ARBITRARY AND CAPRICIOUS. .......... 4

A. FERC's Brief Fails to Salvage Its Interpretation of the Settlement. .......... 4

1. The Settlement's Text and Structure Tie the Refund Provision to the Pending Litigation. .......... 4

2. Context and Extrinsic Evidence Confirm that FERC's Reading Is Wrong. .......... 9

3. FERC's Reading Gives Retroactive Effect to Later-Enacted Law, Contrary to Both California and Federal Law. .......... 12

4. FERC's Reading Produces Unreasonable, Inequitable Results. .......... 14

B. FERC Failed to Apply California's Interpretive Principles and Ignored Several of SDG&E's Central Arguments. .......... 17

C. Intervenors' New Rationales Cannot Sustain FERC's Orders. .......... 20

II. FERC UNLAWFULLY DENIED SDG&E THE ADDER IN THE TO6 PROCEEDING. .......... 22

A. FERC's Denial of the Adder Is Unduly Discriminatory. .......... 22

B. Petitioners' Undue Discrimination Argument Is Not Precluded. .......... 26

CONCLUSION .......... 29

## TABLE OF AUTHORITIES

### CASES

*ANR Storage Co. v. FERC*, 904 F.3d 1020 (D.C. Cir. 2018) ....24

*Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016) ....18

*B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138 (2015) ....29

*Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856 (7th Cir. 2002) ....14

*California Public Utilities Commission v. FERC*, 29 F.4th 454 (9th Cir. 2022) ....12, 14, 15

*County of San Bernardino v. Insurance Co. of the Pennsylvania*, 174 F.4th 597 (9th Cir. 2026) ....18

*Dayton Power & Light Co. v. FERC*, 126 F.4th 1107 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 397 (2025) ....25

*Hansen v. Musk*, 122 F.4th 1162 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2850 (2025) ....27

*Hess v. Ford Motor Co.*, 27 Cal. 4th 516 (2002) ....8

*Holl v. United States District Court for the Northern District of California (In re Holl)*, 925 F.3d 1076 (9th Cir. 2019) ....6

*Howard v. City of Coos Bay*, 871 F.3d 1032 (9th Cir. 2017) ....28, 29

*Kia Motors America, Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733 (6th Cir. 2013) ....12

*Louisiana Public Service Commission v. FERC*, 860 F.3d 691 (D.C. Cir. 2017) ....25

*Love v. Villacana*, 73 F.4th 751 (9th Cir. 2023) ....28

*Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985 (9th Cir. 2005) ....29

*Pacific Gas & Electric Co. v. FERC*, 464 F.3d 861 (9th Cir. 2006) ....27

*Pacific Gas & Electric Co. v. FERC*, 2025 WL 1912363 (9th Cir. July 11, 2025), *cert. denied*, No. 25-438, 2026 WL 490575 (U.S. Feb. 23, 2026) ....................23, 28

*Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33 (1968) ....................18

*Port of Seattle v. FERC*, 499 F.3d 1016 (9th Cir. 2007) ....................17

*Republic Bank v. Marine National Bank*, 45 Cal. App. 4th 919 (4th Dist. 1996) ....................6

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ....................16, 20, 27

*Shaw v. Regents of University of California*, 58 Cal. App. 4th 44 (3d Dist. 1997)....................6

*Southern California Edison Co. v. Superior Court*, 37 Cal. App. 4th 839 (2d Dist. 1995) ....................19

*Swenson v. File*, 3 Cal. 3d 389 (1970) ....................12, 13, 14

*Transmission Agency of Northern California v. Sierra Pacific Power Co.*, 295 F.3d 918 (9th Cir. 2002)....................25

*West Pueblo Partners, LLC v. Stone Brewing Co.*, 90 Cal. App. 5th 1179 (1st Dist. 2023) ....................14

*Winet v. Price*, 4 Cal. App. 4th 1159 (4th Dist. 1992)....................18

*Wolf v. Superior Court*, 114 Cal. App. 4th 1343 (2d Dist. 2004)....................18

**ADMINISTRATIVE RULINGS**

*Dayton Power & Light Co.*, 176 FERC ¶ 61,025 (2021), *modified on denial of reh'g*, 178 FERC ¶ 61,102 (2022), *aff'd sub nom.*, *Dayton Power & Light Co. v. FERC*, 126 F.4th 1107 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 397 (2025) ....................26

*PJM Interconnection, L.L.C.*, 176 FERC ¶ 61,053 (2021)....................1

*Viridon California LLC*, 186 FERC ¶ 61,143 (2024)....................7

### STATUTES

16 U.S.C. § 824d(a) ....................22, 23

16 U.S.C. § 824d(b) ....................22

16 U.S.C. § 824e(a)....................22, 23

16 U.S.C. § 824e(b) ....................9

16 U.S.C. § 824s(d)....................22, 23

Cal. Civ. Code § 1641 ....................5, 8

Cal. Civ. Code § 1648 ....................6, 8

### OTHER AUTHORITIES

*Restatement (Second) of Contracts* (1981) ....................5, 6, 8, 9

*Restatement (Second) of Judgments* (1982) ....................28

## GLOSSARY

| | |
|---|---|
| **1998 Transfer Decision** | *Joint Application of Pacific Gas & Elec. Co.*, D.98-01-053, 1998 WL 242747 (Cal. P.U.C. Jan. 21, 1998) |
| **CAISO** | California Independent System Operator Corporation |
| **CPUC** | California Public Utilities Commission |
| ***CPUC I*** | *CPUC v. FERC*, 879 F.3d 966 (9th Cir. 2018) |
| ***CPUC II*** | *CPUC v. FERC*, 29 F.4th 454 (9th Cir. 2022) |
| **DWR** | California Department of Water Resources State Water Project |
| **FERC** | Federal Energy Regulatory Commission |
| **FPA** | Federal Power Act |
| **Hearing Order** | *SDG&E*, 165 FERC ¶ 61,276 (2018) (3-ER-443) |
| **ISO** | Independent System Operator |
| **Petitioners** | San Diego Gas & Electric Company; Pacific Gas and Electric Company; and Southern California Edison Company |
| **PG&E** | Pacific Gas and Electric Company |
| **PG&E Adder Order** | *PG&E*, 185 FERC ¶ 61,243 (2023) (2-ER-283) |
| **PG&E Adder Rehearing Order** | *PG&E*, 187 FERC ¶ 61,167 (2024) (2-ER-219) |
| **PG&E Remand Order** | *PG&E*, 168 FERC ¶ 61,038 (2019) (3-ER-414) |
| **PG&E Remand Rehearing Order** | *PG&E*, 170 FERC ¶ 61,194 (2020) (2-ER-309) |
| **PG&E TO19 Rehearing Order** | *PG&E*, 168 FERC ¶ 61,217 (2019) (2-ER-369) |

| | |
|---|---|
| **Refund Order** | *CPUC v. SDG&E*, 189 FERC ¶ 61,173 (2024) (1-ER-89) |
| **Refund Provision** | TO5 Settlement Agreement § 1.5.1 |
| **Refund Rehearing Order** | *CPUC v. SDG&E*, 192 FERC ¶ 61,010 (July 2, 2025) (1-ER-30) |
| **ROE** | Return on Equity |
| **RTO** | Regional Transmission Organization |
| **SCE** | Southern California Edison Company |
| **SCE TO18 Rehearing Order** | *SCE*, 168 FERC ¶ 61,206 (2019) (2-ER-352) |
| **SDG&E** | San Diego Gas & Electric Company |
| **Section 219** | 16 U.S.C. § 824s |
| **TO5** | San Diego Gas & Electric Company's Fifth Transmission Owner Rate Case |
| **TO6 Order** | *SDG&E*, 189 FERC ¶ 61,248 (2024) (1-ER-71) |
| **TO6 Rehearing Order** | *SDG&E*, 192 FERC ¶ 61,015 (2025) (1-ER-2) |
| **TO17 Settlement Offer** | PG&E, Offer of Settlement and Stipulation § 2.3(c), Docket No. ER15-2294-000 (3-ER-475) |
| **TO19 Settlement Offer** | PG&E, Offer of Settlement and Stipulation (Sept. 21, 2018) (3-ER-463) |

## INTRODUCTION

On the key contract issue, which FERC[1] barely addresses, FERC stakes its case on an arch-literalist reading that fails on its own terms and ignores the principle FERC itself has recognized: "[T]he entire agreement and particular words should be considered, not as if isolated from the context, but in light of the obligations as a whole and the intention of the parties." *PJM Interconnection, L.L.C.*, 176 FERC ¶ 61,053 at PP14-15 (2021). The *Restatement of Contracts* and Justice Scalia agree. Opening Br. 4-5, 30.

FERC's brief says nothing about the provision that brings the context into the text and shows just what the parties sought. Section 4.1 identifies the "issues" the Settlement "resolve[s]"—pointing to the "Hearing Order" and the CPUC's position that "SDG&E's eligibility … should be determined in the pending litigation regarding PG&E's equivalent 50 basis point adder." 1-ER-40-41 (Refund Rehearing Order P23); 3-ER-450 (Hearing Order P18). That is text, and it refutes FERC's reading. That text also undercuts FERC's attempt to downplay PG&E's TO17 and TO19 settlements, which tied refunds to the CPUC Adder Litigation's outcome. Opening Br. 20 & n.4, 41-42. The PG&E approach made sense: It gave each party what full litigation would have yielded in each rate case, without relitigating Adder issues. To accept FERC's view, you must believe that the parties to SDG&E's case

[1] Abbreviations not defined have the meanings given in Petitioners' opening brief.

intended a vastly broader refund obligation—one triggered by *any* FERC order, at *any* time, on *any* basis, as to *any* California investor-owned utilities. And you must believe this even though Section 4.1 and the Hearing Order show the CPUC itself contemplated tying the refund to the pending litigation, as with PG&E. Textualism is not blinkered literalism, and FERC's is not the best reading—much less the only reasonable reading—of the entire agreement, read in context to identify the parties' shared intent.

A literalist reading also must *actually work* as literalism. FERC's does not. For example, FERC has no answer to the anomalies its reading creates, given the Refund Provision's use of the plural. If just PG&E and SCE lost the Adder because they left CAISO, or because California targeted only them, FERC would have—literally—"issue[d] an order ruling that California investor-owned utilitie*s* are no longer eligible" for the Adder. 2-ER-345 (TO5 Settlement § 1.5.1). But no one would think those decisions about different utilities affect SDG&E's continued eligibility for the Adder. The same is true if Congress simply repealed the federal Adder statute and FERC deemed the utilities ineligible as a result: On FERC's expansive reading, that situation, too, would trigger the Refund Provision and require refunds to 2019.

FERC does not deny that its literalist reading would compel those results but shrugs them off as "baseless hypotheticals." FERC Br. 50. Here, though, is why

they matter: They show that the Refund Provision cannot be applied on its literal text alone and FERC itself does not apply it that way. The question, then, is not whether the Refund Provision carries an implicit limit—on any reading, it does—but which limit the Settlement supports. To answer that question, FERC cannot escape examining the entire agreement, context, and common sense—all of which favor SDG&E. At minimum, FERC's conclusion that the Settlement Agreement is unambiguous cannot stand, especially (but not only) under California's distinctive approach. These flaws require the Court to grant the petitions and vacate the challenged Refund Orders.

Nor can FERC justify the undue discrimination that results from denying SDG&E the Adder. Even if FPA Section 219 did not itself *require* that utilities keep the Adder when a state purports to mandate RTO membership, FERC has an independent duty to craft a reasonable and nondiscriminatory system of incentives. FERC's brief does not address the core problem: Petitioners lose their Adder, while other California transmission owners keep it, simply because California named them in a statute transparently aimed at reducing three disfavored utilities' transmission rates. FERC's only real response—that it merely gave effect to "California's legislative choices" without "resolv[ing]" whether they yield undue discrimination, FERC Br. 40—is a confession of error. Resolving that substantive question is FERC's job under the FPA, and FERC cannot subdelegate it. Nor can FERC avoid

the merits with the procedural objections that dominate its brief. This Court's prior *PG&E* decision did not address this argument, and because FERC below did not reject it as foreclosed by its prior orders, FERC cannot do so on appeal.

## ARGUMENT[2]

### I. FERC'S INTERPRETATION OF THE REFUND PROVISION IS CONTRARY TO LAW AND ARBITRARY AND CAPRICIOUS.

FERC's interpretation of the Refund Provision—for which it seeks no deference, FERC Br. 27—is wrong and is not unambiguously the best reading (Part A). At minimum, vacatur is required because FERC did not analyze the question as the Administrative Procedure Act and California law require (Part B). Intervenors' new arguments cannot rescue the Refund Orders (Part C).

#### A. FERC's Brief Fails to Salvage Its Interpretation of the Settlement.

##### *1. The Settlement's Text and Structure Tie the Refund Provision to the Pending Litigation.*

FERC's sparse treatment of the Settlement dispute ignores critical text and what that text shows about the parties' intent. First, FERC's brief and the Refund Orders are silent on Section 4.1 and the Preamble, both of which define the Settlement's scope by reference to the Hearing Order and the specific issues set for hearing there. In particular, Section 4.1—a "[g]eneral [p]rovision[]"—provides that

[2] SDG&E alone advances the arguments in Part I; all Petitioners advance the arguments in Part II. *See* Opening Br. 8-9.

the parties are "resolv[ing] all issues set for hearing and settlement judge procedures in the Hearing Order." 2-ER-348 (TO5 Settlement § 4.1). The Preamble likewise provides that "this Settlement will resolve all issues set for hearing and settlement judge procedures in the … Hearing Order." 2-ER-339 (TO5 Settlement at 1).

This text, ignored by FERC, establishes the zone of disagreement between the parties—disagreement the Settlement in turn resolved. As to the Adder, the Hearing Order explained that the CPUC "takes issue with SDG&E's proposal for a 50 basis point adder"; "asserts that SDG&E's eligibility for this adder should be determined in the pending litigation regarding PG&E's equivalent 50 basis point adder"; and "suggests that the Commission use that proceeding to determine the outcome of this issue." 3-ER-450 (Hearing Order P18). Section 4.1 and the Preamble then say the Settlement "resolve[s]" those "issues set for hearing." 2-ER-339, 2-ER-348. The obvious inference is that the Refund Provision resolved the Adder issue by agreeing to what the CPUC proposed—i.e., tying refunds to the outcome of the "pending litigation"—not by going further than anyone sought and creating an unlimited refund obligation triggered by "*any* order" finding any California investor-owned utilities ineligible. FERC Br. 41 (emphasis added).

FERC cannot defend its orders while ignoring such probative text. FERC claimed to reach the same result under both California and federal law. 1-ER-39-41 (Refund Rehearing Order PP21, 23). But both bodies of law are clear that contracts

must be read as a whole. Cal. Civ. Code § 1641; *Restatement (Second) of Contracts* § 202(2) (1981). The Settlement's text then sends the reader to the Hearing Order to identify the issues being resolved. Indeed, a document so referenced becomes "part of the contract as if it were recited verbatim." *Republic Bank v. Marine Nat'l Bank*, 45 Cal. App. 4th 919, 921 (4th Dist. 1996); *see Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (3d Dist. 1997); *Holl v. U.S. Dist. Ct. for the N. Dist. of Cal. (In re Holl)*, 925 F.3d 1076, 1084 (9th Cir. 2019). Both California and federal law are also clear that contracts are confined to "those things concerning which it appears that the parties intended to contract," Cal. Civ. Code § 1648, and that the parties' "principal purpose" must be given "great weight," *Restatement (Second) of Contracts* § 202(1). Section 4.1 and the Hearing Order are thus essential textual clues. They show what the Settlement was *about*. And neither hints at an unlimited refund obligation.[3]

Second, FERC's brief ignores that its reading does not work even on its own literalist terms. The Refund Provision is triggered by an order ruling that "California investor-owned utilities"—plural—are "no longer eligible" for the Adder. 2-ER-345 (TO5 Settlement § 1.5.1). FERC's literalism generates anomalies the parties

---

[3] For these reasons, it is irrelevant that Section 4.1 does not expressly cross-reference the Refund Provision. Intv'r Br. 25. Nor does it matter that Section 4.1 is a "standard provision." *Id.* It points back to the Hearing Order, and that answers exactly the question California and federal law ask.

could not have intended—anomalies FERC does not dispute. *Supra* at 2; Opening Br. 33-34. By contrast, those anomalies disappear on SDG&E's reading. The plural is a natural way to target the then-pending CPUC Adder Litigation, in which all three Petitioners participated on remand from this Court in *CPUC I*, and which turned on a question common to all three—whether California law mandated CAISO participation—and so could resolve all three entitlements in one fell swoop. *See* 3-ER-418 (PG&E Remand Order P9 & n.23). That is how the CPUC itself saw it, urging that SDG&E's eligibility be "determined in the pending litigation regarding PG&E's" Adder. 3-ER-450 (Hearing Order P18). Otherwise, it would have been far more natural to refer only to SDG&E, whose Adder is all that matters to its refund obligations to its customers. Opening Br. 33.[4]

FERC's reliance on the Viridon Order underscores the problem. That order held Viridon eligible for the Adder because, unlike Petitioners, Viridon "is not required by state statute to join CAISO." *Viridon Cal. LLC*, 186 FERC ¶ 61,143 at PP56-57 (2024). Yet FERC treated it as an order triggering the Refund Provision. 1-ER-103 (Refund Order P41). If Viridon is a California investor-owned utility, FERC has issued orders holding such utilities both eligible and ineligible—confirming that FERC's literalist reading does not work. If Viridon is not such a

---

[4] Intervenors thus attack a strawman in saying SDG&E "claims that the use of the plural … shows that the settlement could *only* refer to the then-pending Ninth Circuit litigation." Intv'r Br. 24.

utility, the Viridon Order is irrelevant to the Refund Provision. Either way, FERC's text-in-isolation reading cannot account for it.

FERC offers just one textual argument—that the Refund Provision uses the phrase "*an* order." FERC Br. 42-43; 1-ER-41 (Refund Rehearing Order P23); Intv'r Br. 12, 21-23. But that reading does not work, and courts do not read two words in isolation. Cal. Civ. Code § 1641; *Restatement (Second) of Contracts* § 202(2). Even in isolation, the indefinite "an" often lacks such unlimited reach—as SDG&E's basketball-wager example illustrated, Opening Br. 34, without response from FERC. Nor is that point limited to colloquial usage: The California Supreme Court took the same approach in construing a negotiated settlement. *Hess v. Ford Motor Co.*, 27 Cal. 4th 516 (2002), held that a settlement releasing "all other persons" did not—despite its broad text—release a party the settling parties had not intended to cover. *Id.* at 523-25 (applying Cal. Civ. Code § 1648). The court explained that the "circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement." *Id.* at 524 (quotation marks omitted).

FERC also does not address the rest of the Refund Provision, which reinforces the conclusion that FERC is wrong. The Refund Provision does not run refunds from the date of the triggering order, or the date eligibility was lost. It runs them "as of the refund effective date (June 1, 2019) in this proceeding"—the first day of the

TO5 rate. 2-ER-345 (TO5 Settlement § 1.5.1). A refund from day one presupposes a ruling that SDG&E was ineligible from day one. The pending litigation could have produced exactly that: Had the CPUC prevailed on rehearing or in this Court, then California law mandated CAISO participation all along, and Petitioners would have been "no longer eligible." An order applying AB 209 cannot do the same.

For later changes in law, the Settlement provided a different tool. Its moratorium on Section 205 and 206 filings expressly excepts "the 50-basis point adder for CAISO participation." 2-ER-345 (TO5 Settlement § 1.5.3). The California Parties were thus free to file a Section 206 complaint the day AB 209 took effect and, if they prevailed, to obtain refunds running from the complaint date. 16 U.S.C. § 824e(b); Opening Br. 35-37. On SDG&E's reading, a change in law is handled the way the FPA ordinarily handles it, and the Refund Provision does a narrower job: It preserves the TO5 refund effective date for the one issue the parties agreed to leave to the CPUC Adder Litigation, so that the California Parties were no worse off settling than litigating in TO5. FERC's reading unreasonably transforms a change in law—which the Settlement permitted the California Parties to act on prospectively—into a retroactive liability reaching back to 2019.

### 2. *Context and Extrinsic Evidence Confirm that FERC's Reading Is Wrong.*

Context further undermines FERC's reading. The "entire situation, as it appeared to the parties," *Restatement (Second) of Contracts* § 202(1) & cmt. b,

shows that the parties sought to piggyback on the CPUC Adder Litigation. As SDG&E explained, the Settlement was signed shortly after FERC issued the PG&E Remand Order and California sought rehearing. Opening Br. 39-40. The parties had just fully briefed the issue in the pending proceeding, and they were content to rest on that proceeding's outcome instead of relitigating it in TO5. FERC erred in ignoring this crucial context.

FERC also has no persuasive account of the prior PG&E settlements resolving this very issue. 3-ER-471 (TO19 Settlement Offer § 3.3); 3-ER-493 (TO17 Settlement Offer § 2.3(c)). FERC primarily dismissed these settlements as extrinsic evidence it did not need to consider because the text was clear. 1-ER-41 (Refund Rehearing Order P23) (stating FERC "d[id] not look to" extrinsic evidence). But these settlements are critical *context*—showing a practice of tying refunds to the outcome of the CPUC Adder Litigation—which decisionmakers consider in determining whether an agreement is ambiguous. Opening Br. 30. Below, moreover, FERC affirmatively invoked these settlements to support its own textual reading, 1-ER-103-04 (Refund Order P42), which conflicts with its attempt to dismiss them as extrinsic evidence. Regardless, FERC's substantive response—that SDG&E is a "sophisticated part[y]" that "could have included similarly specific language," FERC Br. 25; *see id.* at 46-48—is no response at all. Disputed language can always be clearer. The question is whether it is more likely that the parties intended to

impose on SDG&E a vastly broader refund obligation than PG&E accepted, or that they intended to achieve the same basic result as in the PG&E settlements. FERC offers no reason to believe the former, even as substantial evidence supports the latter.

Indeed, the CPUC's opening negotiating position in its Protest exactly aligns with SDG&E's understanding of what the Refund Provision addresses: "**SDG&E's Eligibility for a 50 Basis Point Adder Should Be Determined in the Pending Pacific Gas and Electric Company Litigation.**" 3-ER-461 (CPUC Protest at 33). DWR recognized at the TO5 Prehearing Conference that SDG&E's right to the Adder was a "live issue" that "may get decided in another case." 3-ER-400 (TO5 Prehearing Tr. at 17). FERC's principal response—that the Protest has "little probative value" because it preceded the Settlement by 11 months, FERC Br. 45—ignores what matters. The CPUC's position framed the dispute the parties settled. Settlements usually land between starting offers. The fact that the CPUC never asked for the sweeping refund right FERC awarded it is strong evidence the parties did not intend to confer any such right.

Nor does the intervening PG&E Remand Order help FERC. *Cf.* FERC Br. 45. That order simply reaffirmed that then-existing California law did not mandate RTO participation and that Petitioners remained eligible for the Adder. Opening Br. 17-18. The live question when the parties settled was whether that ruling would be

reversed on rehearing or on remand from this Court, such that Petitioners would be "no longer eligible" under then-existing law. 2-ER-345. The Refund Provision addressed that contingency: If the ruling were reversed, refunds would issue.

#### 3. *FERC's Reading Gives Retroactive Effect to Later-Enacted Law, Contrary to Both California and Federal Law.*

FERC also has no persuasive answer to the conflict between its reading and the general presumption against retroactivity in contract interpretation. When the parties settled, no refunds were owed under California law as it then existed—as this Court confirmed when it held that "neither the text of California's Public Utilit[ies] Code nor any California caselaw mandates that utilities maintain ongoing membership in CAISO." *CPUC v. FERC*, 29 F.4th 454, 468 (9th Cir. 2022) ("*CPUC II*"). Under FERC's reading, however, SDG&E owes over one hundred million dollars in refunds based on a statute enacted three years later. California has an established principle built to prevent exactly that result: laws "enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." *Swenson v. File*, 3 Cal. 3d 389, 393 (1970); Opening Br. 50-52. Federal law is in accord. *Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733, 738 (6th Cir. 2013).

Here, the Refund Provision contains no statement, let alone a clear one. And applying this presumption is particularly appropriate because the counterparty is the

State itself. The parties are unlikely to have agreed to an open-ended refund obligation that California could *decide to trigger* by enacting new legislation.

The Refund Orders and Intervenors suggest AB 209 was foreseeable. 1-ER-104 (Refund Order P43); Intv'r Br. 39-40. But *Swenson*'s presumption rests on the opposite judgment—that parties contract against the backdrop of the law in force. 3 Cal. 3d at 393; Opening Br. 52. Nor is the suggestion plausible on its own terms. When the parties settled, the California Parties' position was that existing California law *already* mandated Petitioners' CAISO participation (a position they continue to maintain in their brief). Intv'r Br. 9, 16, 37, 40-41. To have bargained over AB 209, the parties would have had to foresee that California would lose that argument, the Legislature would respond with new legislation, and FERC would treat that legislation as eliminating the Adder.

FERC is wrong that SDG&E failed to raise this argument on rehearing. FERC Br. 50-51. SDG&E's rehearing request had a section captioned "FERC Failed to Interpret the TO5 Settlement Consistently with California Law Concerning Subsequent Changes in Law...," and argued, citing *Swenson*, that the Refund Provision could be triggered only by orders "based on existing law and not laws that post-dated the Settlement Agreement." 2-ER-180-81. That is not a "glancing reference[]." FERC Br. 51. Nor can FERC gain by recasting SDG&E's argument as a claim of "impermissibly retroactive ratemaking" under the FPA and asserting

that SDG&E failed to preserve that claim. FERC Br. 50-51. SDG&E's argument rests on a contract-interpretation presumption.

Intervenors' merits response, echoing FERC's, relies on a distinction without a difference—that the Refund Provision was triggered by a FERC order, "not as a result of any change in California law." Intv'r Br. 39 (quoting 1-ER-43 (Refund Rehearing Order P26)). But AB 209 was the essential predicate for the PG&E Orders. So when FERC read "an order" to cover an order based on a later-enacted statute, it gave effect to a post-execution law absent a clear statement—as both California and federal law forbid. Opening Br. 52; *cf. Swenson*, 3 Cal. 3d at 393.

Intervenors wrongly claim that AB 209 merely "clarif[ied] … existing law" and so no retroactivity problem arises. Intv'r Br. 40. But *CPUC II* held that pre–AB 209 California law did not mandate RTO participation. 29 F.4th at 468.

#### ***4. FERC's Reading Produces Unreasonable, Inequitable Results.***

FERC has no persuasive response to the California and federal principle that courts avoid readings that make a contract "unusual, extraordinary, harsh, unjust or inequitable." *W. Pueblo Partners, LLC v. Stone Brewing Co.*, 90 Cal. App. 5th 1179, 1185 (1st Dist. 2023); *accord Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002). As SDG&E explained, FERC's reading produces three results rational parties are unlikely to have intended: (1) a refund obligation with no temporal limit, triggered by any order on any basis; (2) refunds for a period in which,

under *CPUC II*, SDG&E was entitled to the Adder, *supra* at 12; and (3) a windfall to California beyond anything it sought or could have won by litigating. FERC stresses SDG&E's sophistication. FERC Br. 46. But California's interpretive principle has no "sophisticated parties" exception. And the harshness is enormous. SDG&E owes over one hundred million dollars in refunds even though it prevailed in the litigation that was before the parties when they settled—and even though SDG&E was undisputedly entitled to the Adder under this Court's construction of then-existing law. *CPUC II*, 29 F.4th at 466-68.

Nor can FERC dodge its reading's limitless reach—refunds back to 2019 if California mandated RTO membership in 2052, or if SDG&E voluntarily left CAISO—by calling these scenarios "baseless hypotheticals." FERC Br. 50. Hypotheticals test whether a reading yields results the parties are unlikely to have intended, and FERC does not defend the results its reading produces.

FERC says that SDG&E could have escaped these consequences by filing a new rate. FERC Br. 50 (citing 1-ER-104 (Refund Order P42)); *see* Intv'r Br. 37-38. These consequences, however, do not become less bizarre just because SDG&E in hindsight had a way to avoid them. And whether to file a new rate depends on many considerations; utilities often go years between filings. As FERC observes, SDG&E has made just six rate filings in the 28 years since it joined CAISO, FERC Br. 50. On FERC's view, SDG&E could avoid unlimited retroactive liability only by giving

up a critical right—to decide whether *or not* to file a new rate. Moreover, SDG&E *did* terminate TO5 within months after FERC's December 2023 order finding PG&E no longer eligible for the Adder. But under FERC's interpretation, even that timely termination meant that SDG&E would still owe refunds for the period between 2019 and 2022 when SDG&E was undisputedly entitled to the Adder under *CPUC II*.

FERC gets the question backwards when it faults SDG&E for not explaining "why parties could not rationally agree to" a boundless refund obligation in "a comprehensive rate settlement resolving numerous issues." FERC Br. 49. Contract interpretation asks what the parties actually intended, not whether they might have intended something else. FERC also does not try to explain why the parties would have intended to give the California Parties a windfall *on this issue*. Nor, anyway, can FERC defend its orders on this basis. Below, FERC found it did "not need to reach" why its reading yields "an outcome more favorable to the participating California Parties than if the parties had continued litigating the issue." 1-ER-41 (Refund Rehearing Order P23 n.60); *see* FERC Br. 49. FERC cannot seek affirmance by asking this Court to decide the very question it avoided below. A reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

### B. FERC Failed to Apply California's Interpretive Principles and Ignored Several of SDG&E's Central Arguments.

At minimum, vacatur is required because FERC failed to carry out its task as the Administrative Procedure Act ("APA") and California law require.

***APA.*** FERC offers no response to its basic failure of reasoned decisionmaking. An agency acts arbitrarily when it fails to respond meaningfully to significant arguments raised before it. *Port of Seattle v. FERC*, 499 F.3d 1016, 1035 (9th Cir. 2007); Opening Br. 38-39. Here, as SDG&E explained, FERC never engaged with several of SDG&E's central arguments. FERC did not respond to SDG&E's argument that Section 4.1 and the Preamble define the Settlement's scope by reference to the Hearing Order, even though SDG&E squarely raised it. 1-ER-36 (Refund Rehearing Order P14). FERC dismissed the plural "utilities" in a single sentence that failed to credit anything short of a clear cross-reference to the CPUC Adder Litigation. 1-ER-41 (*id.* P23 n.58). It declined to explain why SDG&E would have agreed to an outcome worse than litigating and losing. 1-ER-41 (*id.* P23 n.60). And it relied on the PG&E settlements to support its own reading while refusing to consider SDG&E's extrinsic evidence. FERC's assertion that it "appropriately responded to … objections," FERC Br. 51, does not make it so.

***California law.*** FERC also failed to apply California's rules on extrinsic evidence, despite claiming to follow California law—an error its brief compounds.[5] California law prescribes a sequence. A tribunal must first provisionally consider the proffered extrinsic evidence and then return to the text and ask—in light of everything, including that evidence—whether the language is "reasonably susceptible" to the proffered meaning. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968); *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (4th Dist. 1992). It is "reversible error … to refuse to consider such extrinsic evidence on the basis of [one's] own conclusion that the language of the contract appears to be clear and unambiguous." *Wolf v. Super. Ct.*, 114 Cal. App. 4th 1343, 1351 (2d Dist. 2004); *see Cnty. of San Bernardino v. Ins. Co. of Pa.*, 174 F.4th 597, 605 (9th Cir. 2026).

FERC committed just that reversible error: It looked at the language, found it not reasonably susceptible to SDG&E's reading, and on that basis concluded that it need not reach the extrinsic evidence. 1-ER-41-42 (Refund Rehearing Order P23 n.60, P24). FERC's brief repeats that error by declaring that if the text is not "reasonably susceptible" to SDG&E's reading, "the case is over." FERC Br. 42

[5] Even if federal law applied—as Intervenors but not FERC assert—FERC erred in its approach to extrinsic evidence because the text is at least ambiguous and extrinsic evidence is "relevant … to resolve ambiguity." *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 560-61 (9th Cir. 2016) (quotation marks omitted).

(quoting *S. Cal. Edison Co. v. Super. Ct.*, 37 Cal. App. 4th 839, 847 (2d Dist. 1995)). But the very decision that FERC cites explains that reasonable susceptibility "can be determined from the language of the contract itself *or from extrinsic evidence* of the parties' intent." *S. Cal. Edison*, 37 Cal. App. 4th at 848 (emphasis added). Indeed, even Intervenors concede that "California law takes a different approach to consideration of extrinsic evidence." Intv'r Br. 29. And because FERC chose not to decide whether California or federal law governed, it needed to properly analyze the dispute under both. It was arbitrary and capricious for FERC to depart from California's approach—which it purported to apply—without offering any explanation for that departure or stating that California law did not in fact apply. This failure to explain, too, requires vacatur and remand.

Intervenors misread the orders in claiming that FERC did consider SDG&E's extrinsic evidence in the manner California law requires. Intv'r Br. 30-33. FERC never did what California law dictates: It did not return to the text to ask whether, in light of the extrinsic evidence, the Refund Provision is reasonably susceptible to SDG&E's reading. FERC's brief confirms as much. FERC Br. 45. FERC's assessment of that evidence is unpersuasive in any event. *Supra* at 9-12.

### C. Intervenors' New Rationales Cannot Sustain FERC's Orders.

Intervenors offer several rationales FERC never adopted. These arguments are irrelevant for that reason alone: Courts cannot affirm on grounds the agency did not invoke. *Chenery*, 332 U.S. at 196. These arguments are also meritless.

***First***, Intervenors speculate that because the TO5 Settlement resolved many issues as a "package of compromises that are non-severable," 2-ER-350 (TO5 Settlement § 4.6), SDG&E may have accepted a broad refund obligation in exchange for concessions elsewhere. Intv'r Br. 3, 10-12, 14, 33-37. One flaw in this theory is that FERC *affirmatively disclaimed* it and declined to weigh the parties' tradeoffs. *See* 1-ER-41 (Refund Rehearing Order P23 n.60). Another flaw is that (again) no evidence supports Intervenors' speculation that SDG&E accepted a refund obligation miles beyond the parties' zone of disagreement, while ample evidence indicates that the parties simply sought to use the CPUC Adder Litigation to avoid duplicative litigation.

Even more strained is Intervenors' speculation that SDG&E may have agreed to an unlimited refund obligation because of a 2016 Initial Decision recommending a lower ROE for PG&E. Intv'r Br. 13 & n.6, 35-36 n.12. That decision did not involve SDG&E, and there is zero evidence that it affected the TO5 negotiations, much less the Refund Provision. It is much less probative than the evidence Intervenors dismiss—their own statements during the TO5 proceeding tying

SDG&E's Adder eligibility to the CPUC Adder Litigation. If anything, it would have most directly affected PG&E's own settlements. But those settlements tied PG&E's refunds only to the CPUC Adder Litigation. 3-ER-471, 3-ER-493.

Intervenors' appeal to the policy favoring settlements, Intv'r Br. 35-37, also cuts the other way: Parties will be reluctant to settle if a provision designed to preserve the status quo pending parallel litigation can later be converted into a perpetual refund option—one the Settlement itself shows no party had ever sought.

***Second***, Intervenors argue that federal law governs because the Settlement lacks a choice-of-law clause. Intv'r Br. 22 n.8, 26-28. But again, this argument could never provide a basis for affirmance—because FERC expressly declined to decide whether California or federal law governed. 1-ER-40 (Refund Rehearing Order P23). SDG&E has explained why California law should govern, Opening Br. 30-31 & n.5, but this Court is reviewing the adequacy of FERC's Refund Orders and must hold FERC to its assertion that its reading adheres to both bodies of law.

***Third***, Intervenors contend that Section 4.7's integration clause bars extrinsic evidence. Intv'r Br. 28 (citing 2-ER-350 (TO5 Settlement § 4.7)). But FERC never relied on that provision either, and it does not do the work Intervenors suggest. The clause supersedes certain extrinsic evidence—"previous representations, understandings, negotiations, and agreements, whether written or oral, between the Participants in this proceeding." 2-ER-350 (TO5 Settlement § 4.7). But it does not

reach (for example) the Hearing Order incorporated into the Settlement through Section 4.1, the settlements in the PG&E cases, or Intervenors' pleadings in the TO5 case.

***Fourth***, Intervenors observe that settlements may depart from litigated outcomes and FPA defaults, pointing to the ROE moratorium in Section 1.5.3. Intv'r Br. 33-35. But that proves SDG&E's point: When these parties departed from FPA defaults, they said so expressly—and the moratorium expires on a date certain. 2-ER-345 (TO5 Settlement § 1.5.3). Nothing in the Refund Provision suggests the parties intended to impose an unlimited refund obligation based on later statutes.

## II. FERC UNLAWFULLY DENIED SDG&E THE ADDER IN THE TO6 PROCEEDING.

FERC's denial of the Adder in the TO6 proceeding unduly discriminates against Petitioners relative to similarly situated CAISO members, and FERC's preclusion arguments provide no basis to avoid that conclusion.

### A. FERC's Denial of the Adder Is Unduly Discriminatory.

As Petitioners explained, FERC's denial of the Adder is unduly discriminatory under FPA Sections 205 and 206. 16 U.S.C. §§ 824d(a)-(b), 824e(a), 824s(d); Opening Br. 55-58. Even if Section 219(c)—the Adder statute—does not of its own force require awarding the Adder to RTO members, FPA Sections 205 and 206 independently require FERC to maintain a nondiscriminatory system of incentives. Petitioners provide the same transmission benefits and bear the same

burdens as other CAISO members, yet they alone lose the Adder because California targeted them after this Court's decision in *CPUC II*. Opening Br. 55-58.

FERC offers little in response. FERC does not dispute that whatever Section 219(c) itself requires as to the Adder, Sections 205 and 206 still give FERC independent authority over the ROE in Petitioners' federal rates and that FERC could permissibly choose to maintain the Adder to preserve a nondiscriminatory system of incentives. 16 U.S.C. §§ 824d(a), 824e(a); Opening Br. 56.[6] Nor could FERC dispute that point: *PG&E* held only that the "RTO adder requires voluntary membership" under Section 219(c); it did not address FERC's authority under Sections 205 and 206. *Pac. Gas & Elec. Co. v. FERC*, 2025 WL 1912363, at *3 (9th Cir. July 11, 2025), *cert. denied*, No. 25-438, 2026 WL 490575 (U.S. Feb. 23, 2026).

FERC principally argues that Petitioners are not similarly situated to other CAISO members because California law treats them differently. FERC Br. 38-39. But FERC has not pointed to any substantive difference between Petitioners and an entity like Viridon other than California's choice to target Petitioners (and only

[6] Intervenors assert that Sections 205 and 206 add nothing because Section 219(d) incorporates their requirements. Intv'r Br. 44 n.15, 47 n.16. That points the arrow the wrong way. Section 219(d)'s incorporation of Sections 205 and 206 confirms that the bar on undue discrimination governs FERC's incentive determinations. 16 U.S.C. § 824s(d). It does not license FERC to define who is "similarly situated" under Sections 205 and 206 by reference to whatever lines a state chooses to draw.

Petitioners). Indeed, FERC does not dispute that Petitioners *are* "otherwise similarly-situated" to other California entities. 1-ER-28 (TO6 Rehearing Order P54).

An example illustrates how FERC's "California said so" approach fails to carry out FERC's federal statutory duty. If FERC adopted a rule reducing transmission ROEs for utilities identified on a state-drafted list, this regime would be unduly discriminatory: Similarly situated entities would receive different rates, and no one would think it an adequate answer that the state had chosen to list only some entities. This case is the same. If a state's decision to mandate participation for some RTO members but not others automatically renders those groups "not similarly situated," the FPA's prohibition on undue discrimination imposes no constraint on disparities a state chooses to create. Nor is this danger merely hypothetical: State RTO mandates have exploded—precisely because they are now perceived to provide a mechanism to manipulate federal rates. Opening Br. 6-7, 58-59. FERC cannot ignore that its approach invites states to rejigger federal rates for their own ends, or the undue discrimination that results; it must "provide some reasonable justification for any adverse treatment relative to similarly situated competitors." *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1025 (D.C. Cir. 2018).

FERC's other argument—that "Petitioners' objections to California's legislative choices are not for the Commission to resolve," FERC Br. 40—is a concession, not a defense. It admits that FERC *is* letting California's legislative

choices set the federal rate: The state picks which utilities receive a federal incentive, and FERC implements that choice without asking whether it yields undue discrimination. That is precisely the abdication the FPA forbids. *See La. Pub. Serv. Comm'n v. FERC*, 860 F.3d 691, 696 (D.C. Cir. 2017); Opening Br. 57-58.

And FERC's suggestion that Petitioners should instead "challeng[e] the state law directly, in an appropriate forum," FERC Br. 40, ignores that only FERC can adjudicate this undue-discrimination claim. A court hearing a challenge to California's statute could not decide whether a federal transmission rate is just, reasonable, and nondiscriminatory; that determination is committed to FERC's exclusive jurisdiction. *E.g.*, *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 928 (9th Cir. 2002). Petitioners need not show that California's statute is invalid as a matter of state or constitutional law to show that FERC's incorporation of its classification into a federal rate violates the FPA.

FERC also points to *Dayton Power & Light Co. v. FERC*, 126 F.4th 1107, 1121-31 (6th Cir.), *cert. denied*, 146 S. Ct. 397 (2025), which held that Ohio utilities were differently situated from non-Ohio utilities that "operate within state statutory schemes that do not mandate … participation." *Id.* at 1131; *see* 1-ER-28 (TO6 Rehearing Order P54); 1-ER-67 (Refund Rehearing Order P72). But that out-of-circuit decision had no occasion to grapple with the more egregious discrimination here. The Ohio statute applied to every entity in Ohio that owns or controls

transmission facilities. *Dayton Power & Light Co.*, 176 FERC ¶ 61,025 at P5 (2021) (subsequent history omitted). It did not distinguish among in-state utilities or raise the specter of a state picking winners and losers based on its own priorities.

Intervenors get nowhere with their additional arguments. They claim that awarding the Adder despite AB 209 "would be unduly preferential" given the Sixth Circuit's decision in the Ohio cases and that any discrimination could be resolved by "denying the Incentive Adder to other California transmission owners not subject to" the California statute. Intv'r Br. 48. Because FERC did not rest its orders on those arguments, they cannot support affirmance. *Supra* at 16, 20. They also lack merit. FERC would lack a basis under Section 219(c) to withhold the Adder from other California utilities under FERC precedent. So if leveling is needed to avoid undue discrimination (and it is), FERC can only level up. As to the Ohio cases, even if FERC could deny the Adder based on a state RTO mandate that treats all in-state utilities equally, it cannot rubber-stamp discrimination within a single state. In all events, these are remedial questions for FERC on remand.

**B. Petitioners' Undue Discrimination Argument Is Not Precluded.**

FERC fares no better with its efforts—which consume much of its brief—to keep this Court from reaching the merits.

***First***, FERC contends that this argument is an impermissible collateral attack on its prior *PG&E* orders. FERC Br. 28-34 (citing 2-ER-240 (PG&E Adder

Rehearing Order P47 n.113)). But the challenge here is to a new order, namely FERC's denial of SDG&E's own request for the Adder in SDG&E's own TO6 rate filing. 1-ER-82-86 (TO6 Order PP33-42); 1-ER-28 (TO6 Rehearing Order PP53-54). FERC's own authority confirms such an order is reviewable: The collateral-attack bar applies to petitions that attack "a prior FERC order," not to "review of new orders." FERC Br. 31 (quoting *Pac. Gas & Elec. Co. v. FERC*, 464 F.3d 861, 868 (9th Cir. 2006)). Petitioners do not seek to disturb PG&E's 2023 rate; they challenge the TO6 Orders' independent determination that denying SDG&E the Adder "does not unduly discriminate." 1-ER-28 (TO6 Rehearing Order P53). That is presumably why FERC did not invoke collateral attack in the TO6 Orders, as it did in the refund docket, *compare id.*, *with* 1-ER-46-47 (Refund Rehearing Order P32), but instead decided the question anew. FERC cannot now invoke a defense the TO6 Orders did not. *Chenery*, 332 U.S. at 196.

***Second***, FERC and Intervenors argue that this Court's *PG&E* decision creates an issue preclusion problem. FERC Br. 34-38; Intv'r Br. 44-45. But issue preclusion applies only where "the issue at stake was identical in both proceedings" and "was actually litigated and decided." *Hansen v. Musk*, 122 F.4th 1162, 1172 (9th Cir. 2024) (quotation marks omitted), *cert. denied*, 145 S. Ct. 2850 (2025). This Court asks, among other things, whether the two proceedings involve "substantial overlap"

in argument and "the same rule of law." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017) (citing *Restatement (Second) of Judgments* § 27 cmt. c (1982)).

Here, the issues are not identical. In *PG&E*, Petitioners argued that FERC had misinterpreted Section 219(c) and invoked—as one supporting ground—the "uneven playing field" created by selective state mandates. *PG&E* Opening Br. 55. This case instead involves a distinct issue that Petitioners did not present or brief in *PG&E*: the prohibition on undue discrimination in FPA Sections 205 and 206.

Nor was that issue actually decided. Preclusion is unavailable "if there is 'any doubt' regarding what issue was previously decided." *Love v. Villacana*, 73 F.4th 751, 755 (9th Cir. 2023) (citation omitted). FERC concedes that "this Court did not explicitly address the discrimination argument." FERC Br. 36; *see* Intv'r Br. 45. It instead posits that, by affirming, the Court "necessarily decided" to reject an undue discrimination argument based on Sections 205 and 206. FERC Br. 36. But this Court's unpublished disposition resolved only three questions—(1) whether California's Section 362(c) renders Petitioners' participation involuntary, (2) whether Section 362(c) is preempted, and (3) whether Section 219(c) requires voluntary action—and said nothing about undue discrimination. *PG&E*, 2025 WL 1912363, at *1-3. Nor could the panel have implicitly rejected an undue discrimination argument that Petitioners *did not present*. The panel's statement that a voluntariness requirement "is consistent with FERC's general duty to ensure that

rates are 'just and reasonable,'" FERC Br. 36, explained why its reading of Section 219(c) fit with Section 219(d); it did not address undue discrimination.

***Third***, Intervenors alone argue that FERC's rejection of the discrimination argument in the PG&E Adder Rehearing Order is itself preclusive under *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015). Intv'r Br. 45-46. But FERC itself did not treat its earlier ruling as preclusive in the TO6 Orders; it decided the question again. 1-ER-28 (TO6 Rehearing Order PP53-54). And this Court again cannot affirm on a preclusion ground FERC below did not invoke. *Supra* at 16, 20.

The same point disposes of Intervenors' claim preclusion argument, which asserts that Petitioners bring the "same claim" they brought in *PG&E*. Intv'r Br. 19, 43-44. Moreover, claim preclusion bars only claims arising from a "common nucleus of operative fact," *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987-88 (9th Cir. 2005), and it "does not apply to claims that accrue after the filing of the operative complaint," *Howard*, 871 F.3d at 1040. Petitioners' claim here challenges a different order resolving a different rate—SDG&E's TO6 rate, filed in late 2024—that did not exist when Petitioners sought review in *PG&E*.

## CONCLUSION

The Court should grant the petitions and vacate the orders under review.

November 20, 2026

Respectfully submitted,

*/s/ Zachary C. Schauf*

Zachary C. Schauf
Anand Viswanathan
Arjun R. Ramamurti
JENNER & BLOCK LLP
1099 New York Ave., NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
zschauf@jenner.com

Laurie Edelstein
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
Telephone: (628) 267-6800
ledelstein@jenner.com

*Counsel for Petitioners San Diego Gas & Electric Company, Pacific Gas and Electric Company, and Southern California Edison Company*

Ross Fulton
Dan King
SAN DIEGO GAS & ELECTRIC COMPANY
8330 Century Park Court
San Diego, CA 92123
Telephone: (858) 654-1861
rfulton@sdge.com

John Perkins
Tara Kaushik
PACIFIC GAS AND ELECTRIC COMPANY
300 Lakeside Drive
Oakland, CA 94612
Telephone: (650) 766-9147
jr4t@pge.com

Andrea Tozer
Alexa Mullarky
SOUTHERN CALIFORNIA EDISON COMPANY
2244 Walnut Grove Avenue
Rosemead, CA 91770
Telephone: (626) 302-6713
andrea.tozer@sce.com

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s) 25-1980, 25-5064**

I am the attorney or self-represented party.

**This brief contains 6,999 words,** excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _*/s/ Zachary C. Schauf*_ **Date** November 20, 2026

## CERTIFICATE OF SERVICE

I certify that on November 20, 2026, I electronically filed the foregoing Brief with the clerk of the court for the United States Court of Appeals for the Ninth Circuit, using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: November 20, 2026

/s/ *Zachary C. Schauf*
Zachary C. Schauf
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
zschauf@jenner.com